UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 08-80255-CIV-MARRA/JOHNSON

ZURICH AMERICAN INSURANCE
COMPANY, as subrogee of Mapei Corp. and
Mapei Caribe, Inc.,

      Plaintiff,

v.

HI-MAR SPECIALTY CHEMICALS, LLC,

      Defendant.                    /

And in the Matter of
_____

MAPEI, INC., MAPEI CARIBE, INC., and
MAPEI CORPORATION,

      Plaintiffs,

v.

HI-MAR SPECIALTY CHEMICALS, LLC,

      Defendant.                    /

HI-MAR SPECIALTY CHEMICALS, LLC,

      Third-Party Plaintiff,

v.                              **THIRD-PARTY COMPLAINT**

BASF CORPORATION and
EMCO CHEMICAL DISTRIBUTORS, INC.,

      Third-Party Defendants.        

## THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, HI-MAR SPECIALTY CHEMICALS, LLC (HI-MAR)

pursuant to Rule 14 of the Fed. R. Civ. P. sues Third-Party Defendants BASF CORPORATION

Case No. 08-80255-CIV-MARRA/JOHNSON

(hereinafter sometimes referred to as BASF) and EMCO CHEMICAL DISTRIBUTORS, INC. (EMCO), and alleges as follows:

## I.   PARTIES

1   Upon information and belief, MAPEI CARIBE, INC. (MAPEI CARIBE) is a Puerto Rican corporation with its principal place of business in Puerto Rico. MAPEI CARIBE has alleged that it is engaged in the business of producing products such as grout at a manufacturing facility and warehouse located at Rd. 2km Barrio Espinosa, Dorado, Puerto Rico.

2   Upon information and belief, Plaintiff MAPEI CORPORATION (MAPEI) is an Illinois corporation with its principal place of business in Florida. MAPEI has alleged that it is engaged in the business of producing products such as grout. MAPEI has a manufacturing facility and/or warehouses in Fort Lauderdale and/or Deerfield Beach, Florida.

3   Upon information and belief, Plaintiff ZURICH AMERICAN INSURANCE COMPANY (ZURICH) is a corporation organized and existing under the laws of the State of New York with a principal place of business in Schaumburg, Illinois. ZURICH has alleged that it is authorized to sell insurance to international and domestic corporations and issued a policy of insurance to MAPEI CARIBE and MAPEI.

4   Defendant/Third-Party Plaintiff HI-MAR is a limited liability company organized and existing under the laws of the State of Wisconsin whose members are citizens of Florida, New Jersey and Wisconsin. HI-MAR also has a warehouse in Riviera Beach, Florida.

5   Upon information and belief, Third-Party Defendant, BASF CORPORATION is a Delaware corporation with its principal place of business in the State of New Jersey, and is registered to do business and regularly conducts business in the State of Florida. It is the North American affiliate of BASF SE, a German company.

2

Case No. 08-80255-CIV-MARRA/JOHNSON

6    Upon information and belief Third-Party Defendant EMCO is an Illinois corporation with its principal place of business in the State of Illinois.

## II.    JURISDICTION AND VENUE

7    On or about May 23, 2007, the original action was brought by ZURICH against HI-MAR in the United States District Court for the District of Puerto Rico under case no.: 07-1442 JAG. On or about June 11, 2007, MAPEI CARIBE and MAPEI brought a similar action against HI-MAR in the United States District Court for the District of Puerto Rico under case no.: 07-1495. The complaints in both actions alleged diversity jurisdiction 28 U.S.C. 1332 due to complete diversity among the Plaintiffs and Defendant and the amount in controversy exceeding $75,000.00 exclusive of interest and costs. Both actions were consolidated on July 13, 2007 (hereinafter sometimes collectively referred to as the "Actions"). (Copies of the Complaints are attached as composite Exhibit "A").

8    On or about May 25, 2008 pursuant to Plaintiffs' Unopposed Motion to Transfer Venue, the United States District Court for the District of Puerto Rico issued an Order Transferring Venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1406(a). (See copy of Transmittal Letter which is attached as Exhibit "B").

9    This Court has supplemental jurisdiction over this matter, pursuant to 28 U.S.C. § 1367 as the claims are so related to the claims in the Plaintiffs' action that they form a part of the same case or controversy.

10    Venue is proper in this District pursuant to the Order issued by the United States District Court for the District of Puerto Rico on May 25, 2008 and the product in question, Octafoam D-832, was sold and/or delivered to MAPEI at its facility in Fort Lauderdale and/or

3

Case No. 08-80255-CIV-MARRA/JOHNSON

Deerfield Beach, Florida. In addition, venue is proper under the doctrine of ancillary venue because venue is proper in the original action. *See R.E. Linder Steel Erection Co. v. Alumisteel Sys., Inc.*, 88 F.R.D. 629, 633 (1980).

11      Personal jurisdiction exists in Florida over Third-Party Defendant BASF CORPORATION under F.S. §§ 48.081, 48.181 or 48.193 because:

(a)      BASF designed, manufactured, modified, promoted, marketed, distributed, and/or sold chemicals or chemical related products with the intent and knowledge that its products would be incorporated into products sold and/or delivered to consumers in the State of Florida in the ordinary course of commerce, trade, or use;

(b)      BASF operated, engaged in or carried on a business venture in this state or had an office or agency in this state; or

(c)      BASF committed a tortious act in this state; or

(d)      BASF by itself and/or through an agent was engaged in substantial and not isolated activity within Florida; or

(e)      BASF by itself or through distributors sells to persons and firms within Florida and therefore is engaged in substantial and not isolated activities within Florida and is operating, conducting, engaging in or carrying on a business or business venture in Florida.

12      Personal jurisdiction exists in Florida over Third-Party Defendant EMCO under F.S. §§ 48.081, 48.181 or 48.193 because:

(a)      EMCO marketed, distributed and/or sold chemicals or chemical related products of BASF with the intent and knowledge that said products would be incorporated into products sold and/or delivered to consumers in the State of Florida in the ordinary course of commerce, trade, or use; or

4

Case No. 08-80255-CIV-MARRA/JOHNSON

    (b)    EMCO committed a tortious act in this state.

### III.    ALLEGATIONS OF FACT COMMON TO ALL COUNTS

13    HI-MAR is engaged in the business of manufacturing chemical additives such as dry defoamers including a dry defoaming agent known as Octafoam D-832 ("D-832") and other dry defoaming products. As part of its manufacturing processes HI-MAR obtains various chemicals from certain chemical manufacturers and distributors including BASF and EMCO, respectively, for use in the chemical additives it manufactures.

14    BASF is or was engaged in the business of designing, promoting, developing, manufacturing, mixing, testing, selling and/or distributing a product known as polypropylene glycol P-2000 (P-2000) and other products for sale and use by vendors of customized chemical products, including but not limited to HI-MAR.

15    EMCO is engaged in business of selling and distributing chemicals and chemical related products and at all times material supplied to HI-MAR the P-2000 and other products manufactured and produced by BASF.

16    Between in or about January and in or about July of 2006, HI-MAR purchased P-2000 from BASF, through BASF's duly authorized distributor EMCO, for use in producing D-832 and other dry defoamer products including D-801 and D-829.

17    Between in or about January and in or about July of 2006 HI-MAR manufactured the D-832 alleged in this action by the Plaintiffs to be defective. During the course of the manufacturing processes HI- MAR used the P-2000.

18    When HI-MAR used the P-2000 as a component chemical to produce the D-832 and other products, it was in the same condition as it was when it was purchased from BASF.

19    HI-MAR used the P-2000 in a manner for which it was intended or in a manner

Case No. 08-80255-CIV-MARRA/JOHNSON

that was reasonably foreseeable.

20   Between March and June of 2006, HI-MAR sold certain amounts of D-832 to MAPEI which MAPEI intended to use in its production of its grout formula. The sale or sales took place and/or MAPEI took delivery of the D-832 in the State of Florida. Upon information and belief, after purchasing and taking delivery of the D-832 in Florida, MAPEI sent the D-832 to MAPEI CARIBE at its facility in Dorado, Puerto Rico.

21   On or about May 23, 2007 and June 11, 2007, ZURICH and MAPEI respectively, filed Complaints in this Action alleging that the D-832 manufactured by HI- MAR was defective and proximately caused a fire in MAPEI CARIBE's warehouse in Dorado, Puerto Rico, on June 11, 2006 and proximately caused damages to it and that HI-MAR was legally responsible for the fire and damages under the theories of manufacturing defect, warning defect, negligence, gross negligence and recklessness, and breach of express and/or implied warranties. (See Exhibit "A").

22   In particular the Plaintiffs have alleged: that the D-832 was defective because it was manufactured, processed, distributed, and/or sold with an ingredient that caused it to self-heat and spontaneously ignite while in storage; that HI-MAR failed to adequately and timely warn, apprise or otherwise notify the Plaintiffs that the D-832 had the potential to self-heat and spontaneously heat or that any special precautions were required in handling or storage to ensure that the D-832 did not self-heat or spontaneously ignite; that HI-MAR failed to manufacture, process, package, distribute, inspect, or test the D-832 to ensure that it was not capable of self-heating and igniting or that foreign substances capable of causing self-heating did not contaminate it; and that HI-MAR failed to properly and safely package and distribute the D-832.

23   BASF knew that the P-2000 would be used in the production of dry defoamers such as D-832 and other products of HI-MAR.

6

Case No. 08-80255-CIV-MARRA/JOHNSON

24   BASF knew and intended that its product, P-2000 would be purchased by its customers nationwide and would be used as a component chemical in the production of dry defoamers and other products of HI-MAR that would be used by purchasers in Florida and Puerto Rico.

25   The P-2000 was produced, developed, manufactured, approved, processed, advertised, promoted, distributed and sold by BASF into the stream of commerce.

26   The P-2000 was distributed and sold by EMCO into the stream of commerce and EMCO knew that the P2000 would be used as a component chemical in the production of dry defoamer and other products of HI-MAR, especially the D-832 manufactured by HI-MAR.

27   HI-MAR has given BASF and EMCO notice of the above-described defects in P-2000 that BASF sold to HI-MAR through EMCO and of the litigation that Plaintiffs commenced against HI-MAR.

28   After Plaintiffs sued HI-MAR, HI-MAR recalled all unused D-832 and other products made with P-2000, thereby incurring significant expense and suffering lost sales and profits.

## COUNT I
## COMMON LAW INDEMNITY AGAINST BASF CORPORATION

29   HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

30   This is an action for indemnity against BASF who is or may be liable to HI-MAR for all or part of the Plaintiffs' claims against HI-MAR.

31   HI-MAR denies that the D-832 was defective as alleged by the Plaintiffs in their Complaints. If, however, it is determined that the D-832 is defective as alleged, which is denied, any defect in the D-832 was due to the defective condition of the P-2000 supplied by BASF, and

7

Case No. 08-80255-CIV-MARRA/JOHNSON

not by any fault, action or omission of HI-MAR, but only as a result of the fault, actions or omission of BASF.

32     BASF and HI-MAR have a special relationship such that HI-MAR may be held vicariously, technically, or derivatively liable for alleged defects and deficiencies of the D-832 and other products manufactured by HI-MAR as well as component chemicals and/or ingredients manufactured or supplied by BASF.

33     The alleged fire occurred through BASF's fault, neglect, and carelessness, and that of its agents or employees in negligently manufacturing a dangerous product, and negligently failing to test or inspect the product particularly for its stability.

34     HI-MAR had been using the P-2000 as a component chemical in the production of its dry defoamers for over five (5) years without incident.

35     It was not discovered until sometime after the incident and was confirmed by BASF and/or EMCO that BASF had removed an inhibitor and/or stabilizer from the P-2000 that was sold to HI-MAR in 2006 and used by HI-MAR as a component chemical in its production of D-832 and other products, and that said removal of the inhibitor/stabilizer rendered the P-2000 unstable.

36     HI-MAR had no knowledge and no way of knowing that BASF had removed the inhibitor and/or stabilizer from the P-2000 or that the P-2000 needed an inhibitor/stabilizer.

37     BASF negligently failed to provide adequate warnings reasonably designed and intended to alert customers such as HI-MAR of the potential dangers and consequences of P-2000 without any inhibitor or stabilizer and negligently failed to distribute to consumers safety literature or instructions regarding the dangers of P-2000 without the inhibitor or stabilizer.

38     BASF and its agents or employees negligently and carelessly designed,

8

Case No. 08-80255-CIV-MARRA/JOHNSON

manufactured, refined, processed sold and/or distributed the P-2000, knew and in the exercise of reasonable care had reason to know that such P-2000 without an inhibitor and/or stabilizer would be susceptible to spontaneous degradation and in turn cause the D-832 and other products to self-heat and therefore was defective and dangerous in its condition and unreasonably dangerous to users of the P-2000 such as HI-MAR who used the P-2000 as a component chemical in producing the D-832 and other products.

39      BASF negligently failed to warn, instruct or adequately notify HI-MAR of the dangerous risks and hazards associated with P-2000 not having an inhibitor or stabilizer and/or the safe proper method of using the P-2000 without an inhibitor or stabilizer.

40      Accordingly, if in fact HI-MAR is found responsible for the alleged fire and damage, it could only be by reason of the actions and/or omissions of BASF in the design, manufacture, promotion, marketing, selling or failure to warn of the defective and/or hazardous condition and/or failure to warn of the instability of the P-2000.

41      As a direct and proximate result thereof, HI-MAR would be entitled to complete indemnity over and against BASF for any loss and/or damages suffered by Plaintiffs, including but not limited to the costs and attorneys fees for defending the Plaintiffs' claims.

42      HI-MAR is entitled to recover its attorney's fees in defending the Plaintiffs' claims under the law of indemnity.

WHEREFORE, Third-Party Plaintiff HI-MAR SPECIALTY CHEMICALS, LLC requests that this Court:

A.      Enter a judgment against BASF CORPORATION for any amount that Third-Party Plaintiff may be required to pay Plaintiffs or apportioning the liability of the Third-Party Plaintiff and Third-Party Defendants in the event that this Court determines that the D-832 was

9

Case No. 08-80255-CIV-MARRA/JOHNSON

defective as alleged in Plaintiffs' Complaints;

B. Award Third-Party Plaintiff the costs of suit and attorney's fees in defending the Plaintiffs' lawsuit; and

C. Award Third-Party Plaintiff such other and further leave as this Court deems just and equitable.

## COUNT II
## CONTRIBUTION AGAINST BASF CORPORATION PURSUANT TO F.S. §768.31

43   HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

44   This is an action for statutory contribution against BASF pursuant to F.S. §768.31 and is brought in the alternative and only in the event that it is adjudicated that HI-MAR is liable to the Plaintiffs for all or some of the amounts claimed and are not wholly without fault.

45   Plaintiffs' Complaints contain allegations which, if proven, would establish liability on the part of HI-MAR in this action for damages. If the allegations of this Third-Party Complaint are also proven then HI-MAR and BASF will share a common legal liability to Plaintiff. HI-MAR denies it is liable to Plaintiffs; however, to the extent HI-MAR may be held liable to the Plaintiffs, HI-MAR is entitled to contribution from BASF for any amounts in excess of its pro rata share of responsibility, if any, which it is required to pay in this matter.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC is entitled to contribution against BASF CORPORATION for its pro rata share of responsibility, and all other relief which this court deems just and equitable.

## COUNT III
## COMMON LAW CONTRIBUTION AGAINST BASF

46   HI-MAR adopts and realleges the allegations contained in paragraphs 1 through

Case No. 08-80255-CIV-MARRA/JOHNSON

28 as if plead herein and further states:

47     If it is ultimately determined that HI-MAR is liable to the Plaintiffs, then HI-MAR is entitled to contribution from BASF based on, among other things its manufacture, processing, modification, promotion, marketing, selling or failure to warn of the defective, hazardous and/or change in condition and/or failure to warn of the instability of the subject P-2000 that allegedly jointly contributed to and resulted in Plaintiffs' damages.

48     Any liability to Plaintiffs based on the allegations in the Complaints are a joint common legal liability shared with BASF for which it bears a comparative, proportionate or pro rata responsibility.

49     HI-MAR is entitled to contribution from BASF to the extent HI-MAR is liable to Plaintiffs for any amounts in excess of its pro rata share of responsibility, if any, and requests that any liability of HI-MAR be apportioned accordingly.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC demands contribution from BASF CORPORATION as to any judgment that may be entered against HI-MAR. Additionally, in accordance with Fed. R. Civ. P. 14(c), HI-MAR demands that judgment be entered against BASF CORPORATION and in favor of Plaintiffs, and all other relief which this court deems just and equitable.

### COUNT IV
### COMMON LAW INDEMNITY AGAINST EMCO

50     HI-MAR adopts and realleges the allegations contained in paragraphs 1 through 28 as if plead herein and further states:

51     This is an action for indemnity against EMCO who is or may be liable to HI-MAR for all or part of the Plaintiffs' claims against HI-MAR.

52     EMCO and HI-MAR have a special relationship such that HI-MAR may be held

11

Case No. 08-80255-CIV-MARRA/JOHNSON

vicariously, technically, or derivatively liable for alleged defects and deficiencies of the D¬832 manufactured by HI-MAR as well as component chemicals and/or ingredients manufactured or supplied by BASF, and distributed and/or sold by EMCO.

53    EMCO was the duly authorized distributor of BASF for the P-2000.

54    The P-2000 was sold by BASF to EMCO.

55    HI-MAR purchased from EMCO certain quantities of the P-2000, for use in the production of the D-832 and other products.

56    HI-MAR denies that the D-832 was defective as alleged by the Plaintiffs in their Complaint. If, however, it is determined that the D-832 was defective as alleged, which is denied, any defect in the D-832 was due to the defective condition of the P-2000 distributed and supplied by EMCO, and not by any fault, action or omission of HI-MAR, but only as a result of the fault, actions or omissions of EMCO. EMCO knew or had reason to know that HI-MAR had used and was using the BASF P-2000 as a component chemical in the production of its dry defoamers such as D-832.

57    If in fact the D-832 was in a defective condition and caused the fire of June 11, 2006, then this defective condition resulted only because the D-832 was manufactured, processed, distributed, and/or sold with a substance that caused it to self-heat and spontaneously ignite while in storage and the substance causing said self-heating/spontaneous ignition was the P-2000 manufactured and supplied by BASF and distributed by EMCO. EMCO knew or had reason to know of its defective condition and failed to warn HI-MAR of the same. Accordingly, EMCO should be required to indemnify HI-MAR in whole or in part for any amount awarded to Plaintiffs on Plaintiffs' Complaints.

58    HI-MAR is entitled to recover its attorney's fees in defending the Plaintiffs'

12

Case 9:08-cv-80255-KAM      Document 43-2      Entered on FLSD Docket 08/29/2008      Page 13 of 36

Case No. 08-80255-CIV-MARRA/JOHNSON

claims under the law of indemnity.

WHEREFORE, Third-Party Plaintiff HI-MAR SPECIALTY CHEMICALS, LLC requests that this Court:

A.      Enter a judgment against EMCO CHEMICAL DISTRIBUTORS, INC. for any amount that Third-Party Plaintiff may be required to pay Plaintiffs or apportioning of the liability of the Third-Party Plaintiff and Third-Party Defendants in the event that this Court determines that the D -832 was defective as alleged in Plaintiffs' Complaints;

B.      Award Third-Party Plaintiff the costs of suit and attorney's fees in defending the Plaintiffs' lawsuit; and

C.      Award Third-Party Plaintiff such other and further leave as this Court deems just and equitable.

## COUNT V
## CONTRIBUTION AGAINST EMCO PURSUANT TO F.S. §768.31

59      HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

60.      This is an action for statutory contribution pursuant to F.S. §768.31 and is brought in the alternative and only in the event that it is adjudicated that HI-MAR is liable to the Plaintiffs for all or some of the amounts claimed and are not wholly without fault.

61      EMCO was the duly authorized distributor of BASF for the P-2000.

62      The P-2000 was sold by BASF to EMCO.

63      HI-MAR purchased from EMCO certain quantities of the P-2000, for use in the production of the D-832 and other products.

64      Plaintiffs' Complaints contain allegations which, if proven, would establish liability on the part of HI-MAR in this action for damages. If the allegations of this Third-Party

Case No. 08-80255-CIV-MARRA/JOHNSON

Complaint are also proven then HI-MAR and EMCO will share a common legal liability to Plaintiffs. HI-MAR denies it is liable to Plaintiffs; however, to the extent HI-MAR may be held liable to the Plaintiffs, HI-MAR is entitled to contribution from EMCO for any amounts in excess of its pro rata share of responsibility, if any, which it is required to pay in this matter.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC is entitled to contribution against EMCO CHEMICAL DISTRIBUTORS, INC. for its pro rata share of responsibility, and all other relief which this court deems just and equitable.

## COUNT VI
## COMMON LAW CONTRIBUTION AGAINST EMCO

65      HI-MAR adopts and realleges the allegations contained in paragraphs 1 through 28 as if plead herein and further states:

66      If it is ultimately determined that HI-MAR is liable to the Plaintiffs, then HI-MAR is entitled to contribution from EMCO based on, among other things its promotion, marketing, selling or failure to warn of the defective, hazardous and/or change in condition and/or failure to warn of the instability of the subject P-2000 that allegedly jointly contributed to and resulted in Plaintiffs' damages.

67      Any liability to Plaintiffs based on the allegations in the Complaints are a joint common legal liability shared with EMCO for which it bears a comparative, proportionate or pro rata responsibility.

68      HI-MAR is entitled to contribution from EMCO to the extent HI-MAR is liable to Plaintiffs for any amounts in excess of its pro rata share of responsibility, and requests that any liability of HI-MAR be apportioned accordingly.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC demands contribution from EMCO CHEMICAL DISTRIBUTORS, INC. as to any judgment that may be entered against HI-

14

Case No. 08-80255-CIV-MARRA/JOHNSON

MAR. Additionally, in accordance with Fed. R. Civ. P. 14(c), HI-MAR demands that judgment be entered against EMCO CHEMICAL DISTRIBUTORS, INC. and in favor of Plaintiffs, and all other relief which this court deems just and equitable.

## COUNT VII
## STRICT LIABILITY AGAINST BASF CORPORATION

69     HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

70     While HI-MAR denies the allegations of the defective condition of the D-832, in the event that these allegations are proven to be true, the damages caused to the Plaintiffs were caused by the alleged defective and unreasonably dangerous condition of the P-2000 in that it was manufactured, distributed, and/or sold with a substance that caused it to self-heat and spontaneously ignite while in storage, then the substance causing the same was the P-2000 manufactured and supplied by BASF and distributed by EMCO.

71     HI-MAR had been using the P-2000 as a component chemical in the production of its dry defoamers for over five (5) years without incident.

72     It was not discovered until sometime after the fire of June 11, 2006 and was confirmed by BASF and/or EMCO that BASF had removed an inhibitor and/or stabilizer from the P-2000 that was sold to HI-MAR between January and July in 2006 and used by HI-MAR as a component chemical in its production of D-832 and other products and that said removal of the inhibitor/stabilizer rendered the P-2000 unstable and unreasonably dangerous and made it unsafe for its intended use.

73     HI-MAR had no knowledge and no way of knowing that BASF had removed the inhibitor and/or stabilizer from the P-2000 or that the P-2000 needed any inhibitor/stabilizer.

74     As a direct and proximate result of the aforementioned defective, unreasonably

15

Case No. 08-80255-CIV-MARRA/JOHNSON

dangerous and unsafe condition of the P-2000, not only have the Plaintiffs filed suit against HI-MAR seeking to recover their damages, but the same has caused HI-MAR to suffer extensive damages in the form of compensatory damages for having to recall the D-832 and other products, consequential damages, lost profits, lost income, and loss of business, in excess of $600,000.00.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC is entitled to a judgment for its damages against BASF CORPORATION, for prejudgment interest, costs of suit, and all other relief which this court deems just and equitable.

## COUNT VIII
## NEGLIGENCE AGAINST BASF CORPORATION

HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

75      BASF owed HI-MAR and all end users of P-2000 a duty of care to manufacture, produce and supply P-2000 free from defects and deficiencies for which it was intended.

76      BASF breached its duty of care to HI-MAR in the following respects:

(a)      Failing to inspect, examine and analyze the P-2000 sold to HI-MAR;

(b)      Removing the inhibitor/stabilizer from the P-2000 when in the past it had produced the P-2000 with an inhibitor/stabilizer;

(c)      Failing to warn HI-MAR that the P-2000 sold to HI-MAR in 2006 did not have the inhibitor/stabilizer;

(d)      Failing to warn HI-MAR that the P-2000 sold to HI-MAR in 2006 would cause the D-832 and other products using P-2000 to self-heat and/or spontaneously combust;

(e)      Failing to take all necessary precautions to ensure that the P-2000 would not cause the D-832 and other products using P-2000 to self-heat and/or spontaneously combust;

(f)      Manufacturing P-2000 that was defective, unreasonably dangerous and/or

16

Case No. 08-80255-CIV-MARRA/JOHNSON

unsafe.

77      As a direct and proximate result of the negligent acts of BASF, HI-MAR has suffered compensatory, consequential, lost profit, lost business and lost income related damages in excess of $600,000.00.

WHEREFORE, Third-Party Plaintiff HI-MAR, requests a judgment against BASF CORPORATION for its damages, jointly, severally and individually for prejudgment interest, costs and all other relief which this court deems just and equitable.

## COUNT IX
### STRICT LIABILITY AGAINST EMCO

78      HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

79      While HI-MAR denies the allegations of defective condition of the D-832, in the event that these allegations are proven to be true, the damages caused to the Plaintiffs were caused by the alleged defective and unreasonably dangerous condition of the P-2000 in that it was manufactured, distributed, and/or sold with a substance that caused it to self-heat and spontaneously ignite while in storage, then the substance causing the same was the P-2000 manufactured and supplied by BASF and distributed by EMCO.

80      HI-MAR had been using the P-2000 as a component chemical in the production of its dry defoamers for over five (5) years without incident.

81      It was not discovered until sometime after the fire of June 11, 2006 and was confirmed by BASF and/or EMCO that BASF had removed an inhibitor and/or stabilizer from the P-2000 that was sold to HI-MAR in 2006 and used by HI-MAR as a component chemical in its production of D-832 and other products and that said removal of the inhibitor/stabilizer rendered the P-2000 unstable and unreasonably dangerous and that made it unsafe for its

17

Case No. 08-80255-CIV-MARRA/JOHNSON

intended use.

82    HI-MAR had no knowledge and no way of knowing that BASF had removed the inhibitor and/or stabilizer from the P-2000 or that the P-2000 needed an inhibitor/stabilizer. EMCO had knowledge or had reason to know that BASF had removed the inhibitor/stabilizer from the P-2000 but failed to inform or disclose the same to HI-MAR.

83    EMCO the duly authorized distributor of BASF sold, marketed and/or distributed a product, P-2000 with the inhibitor/stabilizer removed, which was defective and/or unreasonably dangerous.

84    As a direct and proximate result of the aforementioned defective, unreasonably dangerous and unsafe condition of the P-2000, not only have the Plaintiffs filed suit against HI-MAR seeking to recover their damages, but the same has caused HI- MAR to suffer extensive damages in the form of compensatory damages for having to recall the D-832 and other products, consequential damages, lost profits, lost income, and loss of business in excess of $600,000.00.

WHEREFORE, HI-MAR SPECIALTY CHEMICALS, LLC is entitled to a judgment for its damages against EMCO, prejudgment interest, costs of suit, and all other relief which this court deems just and equitable.

## COUNT IX
## NEGLIGENCE AGAINST EMCO

85    HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

86    EMCO owed HI-MAR and all end users of P-2000 a duty of care to sell and distribute P-2000 free from defects and deficiencies for which it was intended.

87    EMCO breached its duty of care to HI-MAR in the following respects:

    (a)    Failing to inspect, examine and analyze the P-2000 sold to HI-MAR;

18

Case No. 08-80255-CIV-MARRA/JOHNSON

(b)     Failing to warn HI-MAR that the P-2000 it had sold to HI-MAR in 2006 did not have the inhibitor/stabilizer and/or that the inhibitor/stabilizer had been removed;

(c)     Failing to warn HI-MAR that the P-2000 it had sold to HI-MAR in 2006 would cause the D-832 and other products to self-heat and/or spontaneously combust;

(d)     Failing to take all necessary precautions to ensure that the P-2000 sold to HI-MAR would not cause the D-832 and other products to self-heat and/or spontaneously combust;

(e)     Selling and/or distributing P-2000 that was defective, unreasonably dangerous and/or unsafe for its intended use.

88     As a direct and proximate result of the negligence of EMCO a substance used in the production of the D-832 and other products, specifically the P-2000 caused the D-832 and other products to manifest symptoms of decomposition, smoldering and/or self-heating.

89     As a direct and proximate result of the negligent acts of BASF, HI-MAR has suffered compensatory, consequential, lost profit, lost business and lost income related damages in excess of $600,000.00.

WHEREFORE, Third-Party Plaintiff HI-MAR, requests a judgment against EMCO for its damages, prejudgment interest, costs and all other relief which this court deems just and equitable.

## COUNT X
## BREACH OF IMPLIED WARRANTY AGAINST EMCO AND BASF

90     HI-MAR realleges the allegations contained in paragraphs 1 through 28 above as if more fully set forth herein.

91     BASF through its distributor EMCO, and/or EMCO on its own behalf, impliedly warranted to HI-MAR that the P-2000 was merchantable and was fit for the purpose for which

19

Case No. 08-80255-CIV-MARRA/JOHNSON

HI-MAR intended to use the P-2000, to-wit, as an ingredient of dry defoamers.

92    BASF through its distributor EMCO, and/or EMCO, breached the warranties of merchantability and fitness for a particular purpose.

93    As consequence thereof, HI-MAR has suffered out-of pocket losses defending against Plaintiffs' claims and effecting its product recall, as well as compensatory, consequential, lost profit, lost business and lost income related damages exceeding in the aggregate $600,000.00.

WHEREFORE, Third-Party Plaintiff HI-MAR, requests a judgment against EMCO and BASF for its damages, prejudgment interest, costs and all other relief which this court deems just and equitable.

Dated: August 29, 2008

s/Jan M. Kuvlenstierna
Jan M. Kuylenstierna
Fla. Bar No. 375985
Email: ikuylenstiernacdfowler-white.com
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
Attorneys for Defendant
HI-MAR SPECIALTY CHEMICALS, LLC

s/Neil M. Rosenbaum
Neil M. Rosenbaum
ARDC No. 6283878
Email: Nrosenbaum@fvldlaw.com
FUNKHOUSER VEGOSEN LIEBMAN &
DUNN LTD
55 West Monroe, Suite 2300
Chicago, IL 60603-5117
Telephone: (312) 701-6824
Facsimile: (312) 701.6801
Appearing Pro Hac Vice as counsel for
HI-MAR SPECIALTY CHEMICALS, LLC

Case No. 08-80255-CIV-MARRA/JOHNSON

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing., on August 29, 2008.

s/ Jan M. Kuylenstierna
Jan M. Kuylenstierna

Case No. 08-80255-CIV-MARRA/JOHNSON

## SERVICE LIST

*Zurich Am Ins Co. v. Hi-Mar Specialty Chems, LLC*, etc., et al.
S.D. Fla. (Palm Beach Div.) Case No. 08-80255-CIV-MARRA/JOHNSON

Douglas B. Fox, Esquire
Cozen O'Connor
1900 Market Street
3rd Floor, The Atrium
Philadelphia, PA 19103
Email:dfoxc@cozen.com
Telephone: (215) 665-2017
Facsimile: (877) 286-4536
Attorney for MAPEI CARIBE, INC.,
Service via transmission of Notices of
Electronic Filing generated by CM/ECF

Anysa Gallardo, Esquire
Cozen O'Connor
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4410
Miami, Florida 33131 -2303
Email:agallardo@cozen.com
Telephone: (305) 704-5940
Facsimile: (305) 704-5955
Attorney for ZURICH AMERICAN
INSURANCE COMPANY, as subrogee of
Mapei Corp. And Mapei Caribe, Inc.
Service via transmission of Notices of
Electronic Filing generated by CM/ECF

Jake P. Skaggs, Esquire
Cozen O'Connor
1221 McKinney Street
One Houston Center, Suite 2900
Houston, TX 77010
Email:jskaggs@cozen.com
Telephone: (832) 214-3900
Facsimile: (832) 214-3905
Attorney for MAPEI CARIBE, INC.,
Plaintiff
Service via transmission of Notices of
Electronic Filing generated by CM/ECF