UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER 08-80255-CIV-MARRA/JOHNSON**

ZURICH AMERICAN INSURANCE COMPANY,
As subrogee of Mapei Corp. and Mapei Caribe, Inc.,

    Plaintiff,
v.

HI-MAR SPECIALTY CHEMICALS, LLC,

    Defendant
_____
And in the Matter of
_____/

MAPEI INC., MAPEI CARIBE, INC. and
MAPEI CORPORATION,

    Plaintiffs,
v.

HI-MAR SPECIALTY CHEMICALS, LLC,

    Defendant.
_____/

HI-MAR SPECIALTY CHEMICALS, LLC.,

    Third-Party Plaintiff,
v.

BASF CORPORATION and
EMCO CHEMICAL DISTRIBUTORS, INC.

    Third-Party Defendants
_____/

**ORDER AND OPINION**

THIS MATTER came before the Court on Third-Party Defendant BASF CORPORATION's ("BASF") Motion to Dismiss Amended Third-Party Complaint (DE 57) and Third-Party Defendant EMCO CHEMICAL's ("EMCO") Motion to Dismiss Count 5 (Statutory

1

Contribution), Count 6 (Common Law Contribution), Count 9 (Strict Liability) and Count 9 (Negligence) of Hi-Mar's Amended Third-Party Complaint (DE 57).  The Court has carefully reviewed the motions, the responses, the reply where filed, and is otherwise fully advised in the premises.

**Background**

This action arises out of a fire which ignited inside Mapei's Puerto Rico facility on June 11, 2006.  See Complaint, DE 24 at 9.  According to the allegations of the Complaint, the fire originated at an area inside the warehouse where Mapei stored D-832 Octofoam that had been manufactured, distributed and/or sold by Hi-Mar Specialty Chemicals, LLC a/k/a Octel Performance Chemicals, Inc. ("Hi-Mar").  See id.  On or about May 23, 2007, the original action was filed by Zurich American Insurance Company, as subrogee of Mapei ("Zurich"), against Hi-Mar for manufacturing defect, warning defect, negligence, gross negligence and recklessness, and breach of express and/or implied warranties.  See id.  On or about June 11, 2007, Mapei brought a similar action against Hi-Mar, alleging manufacturing defect, warning defect, negligence, gross negligence and recklessness, and breach of express and/or implied warranties. See Complaint, case 08-80246, DE 15 at 8.  Subsequently, Hi-Mar filed a third-party complaint against BASF and EMCO, which was replaced by an amended third-party complaint.  See DE 47.

In the third-party complaint, Hi-Mar alleges the following causes of action against BASF: common law indemnity (count 1); contribution pursuant to F.S. § 768.31 (count 2); common law contribution (count 3); strict liability (count 7); negligence (count 8); and breach of implied warranty (count 10). Additionally, in the third-party complaint, Hi-Mar alleges the following causes of action against EMCO: common law indemnity (count 4); contribution

pursuant to F.S. § 768.31 (count 5); common law contribution (count 6); strict liability (count 9); negligence (count 9)[1]; and breach of implied warranty (count 10).

The facts, as alleged in the Complaint, are as follows: Hi-Mar is engaged in the business of manufacturing chemical additives such as dry defoamers including a dry defoaming agent known as Octofoam D-832 ("D-832") and other dry defoaming products. Comp. ¶ 13. As part of its manufacturing processes, Hi-Mar obtains various chemicals from certain chemical manufacturers and distributors including BASF and EMCO, respectively, for use in the chemical additives it manufactures. Id.  Comp. ¶ 13.  BASF is or was engaged in the business of developing, manufacturing, selling and/or distributing a product known as polypropylene glycol P-2000 ("P-2000") and other products for sale and use by vendors of customized chemical products, including but not limited to Hi-Mar. Comp. ¶ 14. EMCO is engaged in the business of selling and distributing chemicals and chemical-related products and at all times material supplied to Hi-Mar the P-2000 and other products manufactured and produced by BASF. Comp. ¶ 15.

Between January and July of 2006, Hi-Mar purchased P-2000 "from BASF, through BASF's duly authorized distributor EMCO," for use in producing D-832 and other dry defoamer products including D-801 and D-829. Comp. ¶ 16. Between January and July of 2006, Hi-Mar manufactured the D-832 alleged by Plaintiff to be defective. Comp. ¶ 17. During the course of the manufacturing processes Hi-Mar used the P-2000 purchased, manufactured and sold by the third-party defendants. Id. When Hi-Mar used the P-2000 as a component chemical to produce the D-832 and other products, "it was in the same condition as it was when it was purchased from BASF." Comp. ¶ 18. Hi-Mar used the P-2000 in a manner for which it was intended or in a

---

[1] The third-party complaint, as numbered, mistakenly labels two causes of action as count 9.

manner that was reasonably foreseeable. Comp. ¶ 19. Between March and June of 2006, Hi-Mar sold certain amounts of D-832 to Mapei which Mapei intended to use in its production of grout formula. Comp. ¶ 20. After purchasing and taking delivery of the D-832 in Florida, Mapei sent the D-832 to its facility in Dorado, Puerto Rico. Id.

On or about May 23, 2007 and June 11, 2007, Zurich and Mapei ("Plaintiffs") filed Complaints against Hi-Mar, alleging that the D-832 manufactured by Hi-Mar was defective and proximately caused a fire in Mapei's warehouse in Dorado, Puerto Rico. Comp. ¶ 21. Plaintiffs have alleged: that the D-832 was defective because it contained an ingredient that caused it to self-heat and spontaneously ignite while in storage; that Hi-Mar failed to adequately warn Plaintiffs that the D-832 had the potential to self-heat and spontaneously ignite or that any special precautions were required in handling or storage of the D-832; that Hi-Mar failed to ensure that the D-832 was not capable of self-heating and igniting or that foreign substances capable of causing self-heating did not contaminate it; and that Hi-Mar failed to properly and safely package and distribute the D-832. Comp. ¶ 22.

BASF and EMCO knew that the P-2000 would be used in the production of dry defoamers such as D-832 and other Hi-Mar products. Comp. ¶ 23, 26. BASF knew and intended that P-2000 would be purchased by its customers nationwide and would be used as a component in the production of dry defoamers and other products of Hi-Mar that would be used by purchasers in Florida and Puerto Rico. Comp. ¶ 24. The P-2000 was manufactured, distributed and/or sold by BASF and EMCO into the stream of commerce. Comp. ¶ 25, 26. Hi-Mar has given BASF and EMCO notice of the above-described defects in P-2000 that BASF sold to Hi-Mar through EMCO and of the litigation that Plaintiffs commenced against Hi-Mar. Comp. ¶ 27. After Plaintiffs sued Hi-Mar, Hi-Mar recalled all unused D-832 and other products made with P-2000, thereby incurring significant expense and suffering lost sales and profits. Comp. ¶ 28.

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.

**Discussion**

*BASF's Motion to Dismiss*

BASF moves to dismiss the following counts alleged against it in the third-party complaint: common law indemnity (count 1); contribution pursuant to F.S. § 768.31 (count 2); common law contribution (count 3); strict liability (count 7); negligence (count 8); and breach of implied warranty (count 10).  The Court will address each cause of action in turn.

Count 1 - Common Law Indemnity

Hi-Mar seeks indemnity against BASF, alleging that BASF is or may be liable to Hi-Mar for all or part of the Plaintiffs' claims against Hi-Mar. Comp. ¶¶ 29-42.  To state a claim for indemnity under Florida law, a plaintiff must allege that (1) the party seeking the indemnity is without fault; (2) the indemnity is only from the party at fault; and (3) a special relationship between the parties.  Jones v. Jeld-Wen, Inc., 2008 WL 2699438, *5 (S.D. Fla. 2008); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 642 (Fla.1999).  In third-party complaints against manufacturers of allegedly defective parts, courts have found that where there is not a direct sale between the parties, there is no indemnity because there is a lack of privity, contract, warranty and thus no relationship.  Jones, 2008 WL 2699438 at *5; Spolski General Contractor, Inc. v. Jett-Aire Corp. Mgmt. of Central Fla., 637 So.2d 968 (Fla. 5th DCA 1994).

Here, Hi-Mar has not alleged a direct sale between the parties.  Rather, Hi-Mar alleges that it "purchased P-2000 from BASF, through BASF's dully authorized distributor EMCO." Comp. ¶ 16.  Thus, Hi-Mar has not properly alleged facts to support a relationship that would establish vicarious, constructive, derivative, or technical liability.  See Jones, 2008 WL 2699438 at *5; Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 494 (Fla.1979).  Accordingly, Hi-Mar's indemnity claim against BASF is dismissed without prejudice, with leave to amend.

6

<u>Counts II and III - contribution pursuant to F.S. § 768.31 and common law contribution</u>

BASF moves to dismiss Hi-Mar's statutory and common law contribution claims because (1) they are "duplicative"; (2) contribution is exclusively a statutory remedy under Florida law; and (3) Hi-Mar has sought contribution for both contract-based and tort claims.

First, with regard to the argument that the statutory and common law contribution claims are duplicative, BASF's argument ignores the basic tenet of alternative pleading under Rule 8(d)(2) of the Federal Rules of Civil Procedure. While Hi-Mar can only recover once for the same actual damages, regardless of the number of alternative theories presented, it is not barred against pleading common law contribution in Count III simply because it has also plead statutory contribution in Count II.

Nonetheless, BASF is correct that contribution is "exclusively a statutory remedy." <u>Horowitz v. Laske</u>, 855 So.2d 169, 173 (Fla. 5th DCA 2003); citing <u>Florida Patient's Compensation Fund v. St. Paul Fire & Marine Insurance Co.</u>, 559 So.2d 195, 197 (Fla.1990). Accordingly, Count III, common law contribution, is hereby dismissed without prejudice to amend if it is later determined that some law other than Florida law is applicable to the instant case.

In Count II, Hi-Mar seeks statutory contribution from BASF pursuant to Florida Statute § 768.31. Statutory contribution is restricted to tort claims. <u>See</u> § 768.31(2)(a) (restricting the right to contribution to "when two or more persons become jointly or severally liable <u>in tort</u> for the same injury to person or property") (emphasis added). Plaintiffs Zurich and Mapei have brought both contract-based and tort-based claims against Hi-Mar. Hi-Mar has not alleged for which of these claims it is seeking contribution from BASF. Thus, it appears that Hi-Mar has improperly sought contribution for both contract-based claims and tort-based claims.

7

Accordingly, Hi-Mar's statutory contribution claim is dismissed without prejudice, with leave to amend, to allege with specificity for which claims it is seeking contribution.

Counts VII and VIII - Strict Liability and Negligence

Hi-Mar alleges causes of action for strict liability and negligence against BASF.  BASF argues that these claims are barred by the economic loss rule.  See DE 57 at 6-8.  In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004), the Florida Supreme Court explained the two different circumstances the economic loss rule applies under Florida law:  The first application, the "contractual privity economic loss rule" is when parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract.  As presently alleged, the case between Hi-Mar and BASF does not involve parties in contractual privity (because Hi-Mar has not alleged a direct sale of the D-832 from BASF to Hi-Mar).  Therefore, the "contractual privity economic loss rule" is inapplicable.[2]

The second application, the "products liability economic loss rule," applies when there is a defect in a product that causes damage to the product, but causes no personal injury or damage to other property.  Id. at 536-38.  The "products liability economic loss rule" bars a tort cause of action where a product is involved, when the product damages only itself, and the losses are purely economic. See Tyco Safety Products Canada, Ltd. v. Abracon Corp., 2008 WL 4753728, *4 (S.D. Fla. 2008) (citing Florida Power and Light Co. v. Westinghouse Electric Corp., 510 So.2d 899, 900 (Fla. 1987).  The "other property" exception is limited to "property unrelated and unconnected to the product sold." Abracon, 2008 WL 4753728 at *4  (citing Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. Dist. Ct. App. 1996).

---

[2] In the event that Hi-Mar can, in good faith, allege direct privity with BASF, see supra Count 1 - Common Law Indemnity, the contractual privity economic loss rule would also bar Hi-Mar from bringing strict liability and negligence claims against BASF.

This rule applies to the present case. Hi-Mar does not allege any personal injury or damage to any of its property other than to its D-832, of which the allegedly defective P-2000 was a component. Similar to the defective resonator in Abracon that damaged the plaintiff's smoke detectors, and the defective resin that caused damage to the boat in Jarmco, the damage to a product in this case, the D-832, which was allegedly caused by a defective component part, the P-2000, is barred by the "products liability economic loss rule." See Abracon, 2008 WL 4753728 at *3-4. Based on the foregoing precedent, the Court dismisses with prejudice Hi-Mar's strict liability and negligence claims against BASF (Counts VII and VIII).

Count X - Breach of Implied Warranty

Under Florida law, "the plaintiff must be in privity with the warrantor" in order to succeed on a breach of implied warranty claim. Amoroso v. Samuel Friedland Family Enterprises, 604 So.2d 827, 833 (Fla. 4th DCA 1992); see also Weiss v. Johansen, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005). As the court explained in T.W.M. v. Am. Med. Sys., Inc., 886 F.Supp. 842 (N.D. Fla. 1995):

> The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant. Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). "Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties." Intergraph Corp. v. Stearman, 555 So.2d 1282, 1283 (Fla. 2d DCA 1990). "A warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity." Elizabeth N. v. Riverside Group, Inc., 585 So.2d 376, 378 (Fla. 1st DCA 1991). See also Spolski General Contractor, Inc. v. Jett-Aire Corp. Aviation Management of Central Fla., Inc., 637 So.2d 968, 970 (Fla. 5th DCA 1994).

T.W.M., 886 F.Supp. at 844.

Here, BASF argues that Hi-Mar's breach of implied warranty claim fails because Hi-Mar has not alleged direct privity between it and Hi-Mar. In its response in opposition, Hi-Mar appears to be arguing that EMCO was BASF's agent in selling the P-2000, such that Hi-Mar was

9

in privity with BASF. (DE 75 at 17). This claim is not clear from Hi-Mar's allegations. See Comp. ¶ 16, 91. Accordingly, Count X, breach of implied warranty, is dismissed without prejudice to amend to allege more precisely an agency relationship between EMCO and BASF, if that is indeed the theory upon which Hi-Mar intends to proceed.

*EMCO's Motion to Dismiss*

EMCO moves to dismiss the following counts alleged against them in the third-party complaint: contribution pursuant to F.S. § 768.31 (count 5); common law contribution (count 6); strict liability (count 9); and negligence (count 9)[3]. EMCO alternatively requests that Hi-Mar provide a more definite statement as to certain allegations. The Court will address each cause of action in turn.

Counts V and VI - contribution pursuant to F.S. § 768.31 and common law contribution

Count VI, common law contribution, is hereby dismissed without prejudice to amend if it is later determined that some law other than Florida law is applicable to the instant case. See supra, dismissing Count III, common law contribution against BASF.

Regarding Count V, statutory contribution pursuant to Florida Statute § 768.31, the claim is dismissed without prejudice, with leave to amend. See supra, dismissing Count II, statutory contribution against BASF.

Counts IX and IX [4] - Strict Liability and Negligence

Hi-Mar's strict liability and negligence claims against EMCO are barred by the "contractual privity economic loss rule," which prohibits tort actions to recover solely economic damages for those in contractual privity. Indemnity Insurance Co. of North America v. American

---

[3] The third-party complaint, as numbered, mistakenly labels two causes of action as count 9.

[4] See n.2, supra.

Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004).  The rule is designed to prevent the parties from "circumventing the allocation of losses set forth in the contract" by making a claim for economic loss in tort. Id.; see also Third-Party Complaint, ¶¶ 85-89 (Count X: Hi-Mar's breach of implied warranty claim against EMCO).  "[C]ommercial parties are more than capable of protecting themselves against defective products by bargaining for such protection in their contracts." Tyco Safety Products Canada, Ltd. v. Abracon Corp., 2008 WL 4753728, *4 n.5 (S.D. Fla. 2008), citing Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. Dist. Ct. App. 1996).  Accordingly, Hi-Mar's strict liability and negligence claims against EMCO are hereby dismissed with prejudice.

Based on the foregoing, **IT IS ORDERED and ADJUDGED** as follows:

1. BASF's Motion to Dismiss Amended Third-Party Complaint (DE 57) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a.  Hi-Mar's indemnity claim against BASF (Count I) is dismissed without prejudice, with leave to amend.

   b.  Hi-Mar's statutory contribution claim against BASF (Count II) is dismissed without prejudice, with leave to amend.

   c.  Hi-Mar's common law contribution claim against BASF (Count III) is dismissed without prejudice to amend if it is later determined that some law other than Florida law is applicable to the instant case.

   d.  Hi-Mar's strict liability and negligence claims against BASF (Counts VII and VIII) are dismissed with prejudice.

   e.  Hi-Mar's breach of implied warranty claim (Count X) is dismissed without prejudice as to BASF to amend to allege more precisely an agency relationship between EMCO and BASF, if that is indeed the theory upon which Hi-Mar intends to proceed.

2. EMCO's Motion to Dismiss Count 5 (Statutory Contribution), Count 6 (Common Law Contribution), Count 9 (Strict Liability) and Count 9 (Negligence) of Hi-Mar's Amended Third-Party Complaint (DE 57) is **GRANTED**:

a.. Hi-Mar's statutory contribution claim against EMCO (Count V) is dismissed without prejudice, with leave to amend.

b. Hi-Mar's common law contribution claim against EMCO (Count VI) is dismissed without prejudice to amend if it is later determined that some law other than Florida law is applicable to the instant case.

c. Hi-Mar's strict liability and negligence claims (Counts IX and IX) against EMCO are dismissed with prejudice.

3. In its opposition to the third party defendants' motions to dismiss, Hi-Mar requests that the court allow it to amend the third-party amended complaint to allege a claim for negligent misrepresentation. See DE 75 at 18-20; DE 78 at 12-14. Hi-Mar may so amend, and the third-party defendants will have the opportunity to respond to the new cause(s) of action.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of June, 2009.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record