**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-80255-CIV-MARRA/JOHNSON

ZURICH AMERICAN INSURANCE COMPANY,
As subrogee of Mapei Corp. and Mapei Caribe, Inc.,

      Plaintiff,

v.

HI-MAR SPECIALTY CHEMICALS, LLC,

      Defendant
_____
And in the Matter of
_____/

MAPEI INC., MAPEI CARIBE, INC. and
MAPEI CORPORATION,

      Plaintiffs,

v.

HI-MAR SPECIALTY CHEMICALS, LLC,

      Defendant.
_____/

HI-MAR SPECIALTY CHEMICALS, LLC.,

      Third-Party Plaintiff,

v.

BASF CORPORATION and
EMCO CHEMICAL DISTRIBUTORS, INC.

      Third-Party Defendants
_____/

## ORDER AND OPINION

      THIS MATTER came before the Court on Third-Party Defendant BASF

CORPORATION's ("BASF") Motion to Dismiss Second Amended Third-Party Complaint (DE

113) and Third-Party Defendant EMCO CHEMICAL's ("EMCO") Motion to Dismiss Count V

(Common Law Indemnity), Count VI (Statutory Contribution), and Count VII (Negligent Misrepresentation) of Hi-Mar's Second Third-Party Complaint (DE 115).  The Court has carefully reviewed the motions, the responses, replies, supplemental briefing, and is otherwise fully advised in the premises.

**Background**

This action arises out of a fire which ignited inside Mapei's Puerto Rico facility on June 11, 2006.  See Complaint, DE 24 at 9.  The Court previously entered an Order and Opinion (DE 102, June 25, 2009) on third-party defendants BASF CORPORATION's ("BASF") and EMCO CHEMICAL's ("EMCO")'s motions to dismiss Hi-Mar Specialty Chemicals, LLC a/k/a Octel Performance Chemicals, Inc. ("Hi-Mar")'s Amended Third Party Complaint.   The Court incorporates by reference its June 25, 2009 Order and assumes the reader's familiarity with that Order.

The Court's June 25, 2009 Order granted Hi-Mar leave to file a second amended third party complaint in accordance with that Order.  See DE 102 at 11-12.  Hi-Mar filed its Second Amended Third Party Complaint (DE 106) against BASF and EMCO on July 20, 2009.  In the Second Amended Third Party Complaint, Hi-Mar alleges the following causes of action against BASF: Common Law Indemnity (Count I); Contribution Pursuant to F.S. § 768.31 (Count II); Negligent Misrepresentation (Count III); and  Breach of Implied Warranty (Count IV). Additionally, in the Second Amended Third Party Complaint, Hi-Mar alleges the following causes of action against EMCO: Common Law Indemnity (Count V); Contribution Pursuant to F.S. § 768.31 (Count VI); Negligent Misrepresentation (Count VII); and Breach of Implied Warranty (Count VIII).  BASF and EMCO each filed a motion to dismiss.

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.

**Discussion**

*BASF's Motion to Dismiss*

BASF moves to dismiss the following counts alleged against it in the Second Amended Third Party Complaint: Common Law Indemnity (Count I); Contribution Pursuant to F.S. § 768.31 (Count II); Negligent Misrepresentation (Count III); and Breach of Implied Warranty (Count IV). The Court will address each cause of action in turn.

Count 1 - Common Law Indemnity[1]

Hi-Mar seeks indemnity against BASF, alleging that BASF is or may be liable to Hi-Mar for all or part of the Plaintiffs' claims against Hi-Mar. Comp. ¶¶ 16-36. To state a claim for indemnity under Florida law, a plaintiff must allege that (1) the party seeking the indemnity is without fault; (2) the indemnity is only from the party at fault; and (3) a special relationship between the parties. Jones v. Jeld-Wen, Inc., 2008 WL 2699438, *5 (S.D. Fla. 2008); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 642 (Fla.1999).

> Common law indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 493 (Fla. 1979). "A weighing of the relative fault of tortfeasors has no place in the concept of indemnity for the one seeking indemnity must be without fault." Id. In order for a common law indemnity claim to stand, a two-pronged test must be satisfied: (1) the indemnitee must be faultless and (2) the indemnitee's liability must be solely

---

[1] In its June 29, 2009 Order, the Court dismissed without prejudice Hi-Mar's common law indemnity claim against BASF, holding as follows:

> Here, Hi-Mar has not alleged a direct sale between the parties. Rather, Hi-Mar alleges that it "purchased P-2000 from BASF, through BASF's duly authorized distributor EMCO." Comp. ¶ 16. Thus, Hi-Mar has not properly alleged facts to support a relationship that would establish vicarious, constructive, derivative, or technical liability. See Jones, 2008 WL 2699438 at *5; Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 494 (Fla.1979).

DE 102 at 6.

4

vicarious for the wrongdoing of another. <u>Gen. Portland Land Dev. Co. v. Stevens</u>, 395 So.2d 1296, 1299 (Fla. 4th DCA 1981) (discussing <u>Houdaille</u>, 374 So.2d 490).

<u>Zeiger Crane Rentals, Inc. v. Double A Industries, Inc.</u>, 16 So.3d 907, 911 (Fla. 4th DCA 2009).

In third-party complaints against manufacturers of allegedly defective parts, courts have found that where there is not a <u>direct</u> sale between the parties, there is no indemnity because there is a lack of privity, contract, warranty and thus no relationship. <u>Jones</u>, 2008 WL 2699438 at *5; <u>Spolski General Contractor, Inc. v. Jett-Aire Corp. Mgmt. of Central Fla.</u>, 637 So.2d 968 (Fla. 5th DCA 1994).

BASF again moves to dismiss Hi-Mar's indemnity claim, arguing that it still does not allege a special relationship between Hi-Mar and BASF. (Mot. at 6). Here, upon review of the complaint, it is clear that Hi-Mar has alleged direct sales between Hi-Mar and BASF. For example, in paragraphs 19-20, Hi-Mar alleges as follows:

> 19.   Between in or about January and in or about July 2006, Hi-Mar purchased P-2000 from BASF for use in producing D-832 and other dry defoamer products including Hi-Mar D-801 and Hi-Mar D-829.

> 20.   In particular, prior to the date of the Incident, BASF made direct sales of P-2000 to Hi-Mar as is evidenced by the copies of invoices and bills of lading dated March 22 and 23rd, 2006, between BASF and Hi-Mar (attached hereto as Exhibit "A". These sales establish direct privity between Hi-Mar and BASF regarding the sale of the P-2000. In addition, BASF treated Hi-Mar as its customer. For example, BASF responded to questions from Hi-Mar regarding its products. (See email correspondence between Hi-Mar and BASF attached hereto as Exhibit "B").

DE 106 at ¶¶ 19-20. Based upon these allegations, the Court finds that Hi-Mar has sufficiently alleged direct sales between the parties to establish privity with BASF.

BASF also moves to dismiss Hi-Mar's indemnity claim on the grounds that Hi-Mar's ability to allege indemnity is foreclosed by the allegations of active negligence or fault against Hi-Mar in Plaintiff Zurich American Insurance Company's Complaint. <u>See</u> DE 24 at 11-13. BASF points out that Hi-Mar did not simply sell BASF's P-2000 to Plaintiffs. Instead, Hi-Mar

mixed BASF's P-2000 with other products to create Hi-Mar's product D-832, and then sold its D-832 to Plaintiffs. See DE 106 at ¶¶ 13, 21.

"For purposes of the indemnification and breach of contract cross-claims, [defendants] are not bound by the allegations of the original complaint and the characterization of conduct set forth therein." Rea v. Barton Protective Services, Inc., 660 So.2d 772, 773 (Fla. 4th DCA 1995). Indeed, in Julien P. Benjamin Equipment Co. v. Blackwell Burner Co., 450 So.2d 901, 902 (Fla. 3d DCA 1984), the appellate court reversed a trial court's dismissal of a third-party indemnity action, holding that the fact that the plaintiff's complaint alleged only active negligence by the distributor did not "preclude[] the maintenance of the indemnity claim on the presently asserted ground that the distributor's liability, if any, arises only vicariously for a defect created in the product by the manufacturer." (citations omitted).

Here, Hi-Mar alleges that BASF removed the inhibitor and/or stabilizer from its P-2000 product, rendering the P-2000 unstable, and that BASF failed to notify Hi-Mar of the change in composition of the P-2000. DE 106 at ¶ 28.  Thus, a review of the second amended third-party complaint clearly shows that Hi-Mar has alleged that if it is found to be liable to Plaintiffs, such a finding could only be based on its role, if any, as a passive tortfeasor due to the alleged acts and omissions of BASF, who removed the stabilizer/inhibitor from the P-2000 and failed to notify Hi-Mar of the same. DE 106 at ¶¶ 31-34.  Accordingly, Hi-Mar's allegations against BASF meet the requirements to state a claim for indemnity under Florida law. See Jones, 2008 WL 2699438, *5 (third-party plaintiff must allege that (1) the party seeking the indemnity is without fault; (2) the indemnity is only from the party at fault; and (3) a special relationship between the parties).  BASF's motion to dismiss Count I is denied.[2]

---

[2] The Court never required Hi-Mar to identify all direct sales between Hi-Mar and BASF, nor did it require Hi-Mar to attach any invoices, bills of lading, etc.  The Court sees no reason to limit Hi-Mar's indemnity claim to the documents attached to Hi-Mar's second amended third-

Count II - Contribution Pursuant to F.S. § 768.31[3]

BASF moves to dismiss Hi-Mar's statutory contribution claim based upon the recent decision by the Florida Second District Court of Appeal in T&S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maintenance & Repair, Inc., 11 So. 3d 411 (Fla. 2d DCA 2009).   In that case, the court held that a right of statutory contribution only exists under Florida's Uniform Contribution Among Tortfeasors Act (F.S. § 768.31) in favor of a tortfeasor who has paid more than its pro rata share of common liability.   Id. at 412.   The appellate court explained that the current version of section 768.81 appears to have "rendered obsolete" prior case law that a defendant could file a third-party claim against another in the same case brought by the plaintiff, even though the liability of the third-party plaintiff had not yet been established.   Id at 413.

In its response, Hi-Mar argues that the Court should ignore Wink in favor of pre-2006 amendment cases as well as other cases decided since the 2006 amendment to § 768.81, which have continued to allow third party contribution claims.   However, "[a]bsent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law."   Galindo v. ARI

_____

party complaint, which appear to be provided as examples, nothing more.

[3]In its June 29, 2009 Order, the Court dismissed without prejudice Hi-Mar's statutory contribution claim against BASF, holding as follows:

> Statutory contribution is restricted to tort claims.   See § 768.31(2)(a) (restricting the right to contribution to "when two or more persons become jointly or severally liable in tort for the same injury to person or property") (emphasis added).   Plaintiffs Zurich and Mapei have brought both contract-based and tort-based claims against Hi-Mar.   Hi-Mar has not alleged for which of these claims it is seeking contribution from BASF.   Thus, it appears that Hi-Mar has improperly sought contribution for both contract-based claims and tort-based claims.   Accordingly, Hi-Mar's statutory contribution claim is dismissed without prejudice, with leave to amend, to allege with specificity for which claims it is seeking contribution.

DE 102 at 6-7.

Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000).   The Wink decision was issued last year. Hi-Mar does not cite any subsequent case calling the Wink decision into question.  Moreover, the Wink decision specifically calls into question the decisions relied upon by Hi-Mar of Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484, 487 (Fla. 4th DCA 2000) and Attorneys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc., 547 So.2d 1250, 1251 (Fla. 2d DCA 1989), stating that they have been "rendered obsolete" in situations like this one.  Id. at 412-13.   Additionally, the post-2006 amendment cases of N.Y. Buffet, Inc. v. Certain Underwriters at Lloyd's London, 950 So. 2d 438 (Fla. 4th DCA 2007) and  CC-Aventura, Inc. v. Weitz Co., LLC, 2009 WL 2136527 (S.D. Fla. July 13, 2009), cited by Hi-Mar, do not address the recent statutory abolition of joint and several liability and the interaction between the abolition of joint and several liability and a claim of statutory contribution under Florida law.

Upon consideration, the Court will deny BASF's motion to dismiss Hi-Mar's statutory contribution claim based upon the recent decision by the Florida Second District Court of Appeal in Wink, without prejudice to reasssert the motion at the summary judgment stage.  The Court is not prepared to rule at this time whether there is persuasive indication that the Florida Supreme Court would decide the issue differently than the Wink court.

Count III - Negligent Misrepresentation

In its second amended third party complaint, Hi-Mar brings a new claim, that of negligent misrepresentation (Count III).

In order to state a claim for negligent misrepresentation, a plaintiff must allege (1) there is a misrepresentation of material fact; (2) the party making the misrepresentation either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representation was made with the intent to induce another to act on the misrepresentation and (4) the plaintiff suffered a resulting injury

while acting in justifiable reliance upon the misrepresentation.  <u>Florida Women's Medical Clinic, Inc. v. Sultan</u>, 656 So.2d 931, 933 (Fla. Dist. Ct. App. 1995), <u>citing</u> <u>Baggett v. Electricians Local 915</u>, 620 So.2d 784, 786 (Fla. Dist. Ct. App. 1993); <u>Atlantic Nat'l Bank of Fla. v. Vest</u>, 480 So.2d 1328, 1331-32 (Fla. Dist. Ct. App. 1985).

Here, Hi-Mar has alleged each of the required elements of negligent misrepresentation against BASF:

> 64.  In or about August 2005 BASF ceased using BHT to make the P-2000 that HI-MAR used as a component in HI-MAR's production of D-832 and other products.  BASF's removal of BHT rendered the P-2000 unstable.  BASF did not notify HI-MAR of the change in the composition of P-2000.  On the contrary, BASF continued to sell P-2000 to HI-MAR and, in connection with such sales, to furnish HI-MAR product safety data sheets and material data sheets and other product information identical to those that BASF previously furnished to HI-MAR. . . .

> 71.  The representations contained in the product safety data sheets and material data sheets and other product materials for P-2000 were made by BASF to induce its prospective or current customers, including HI-MAR, to purchase and/or continue purchasing P-2000 from BASF instead of purchasing a similar or substitute product with foam inhibiting applications from one of BASF's competitors.

> 74.  By removing the BHT from the formula of the P-2000 in August 2005 and failing to advise HI-MAR of the change in composition in any communications thereafter, BASF  misrepresented and/or omitted material facts in its communications and representations to HI-MAR regarding P-2000.

> 75.  BASF failed to exercise reasonable care in ascertaining the accuracy of the information regarding the components of the P-2000 and otherwise failed to exercise reasonable care in communicating the removal of the BHT to HI-MAR.

> 76.  BASF knew or should have known that its representations and communications to HI-MAR following its removal of BHT from P-2000 in August 2005 were false and omitting material information, but BASF nonetheless made its representations to HI-MAR in order to induce HI-MAR to enter future agreements to purchase P-2000 for use as a component chemical in the D-832 rather than risk losing HI-MAR's future business to a competitor selling a similar or substitute product made with an inhibitor/stabilizer.

77.   In reasonable reliance on BASF's misrepresentations and material omissions, HI-MAR was induced to and did agree to purchase P-2000 in 2006 and use it as a component chemical to produce the D-832.

78.   As a direct and proximate result of the aforementioned misrepresentations and material omissions, HI-MAR has suffered extensive damages in the form of compensatory damages for having to recall the D-832, consequential damages, lost profits, lost income, and loss of business related damages in excess of $600,000.00.

See DE 106 at ¶¶ 64, 71, 74-78.

BASF argues that the negligent misrepresentation claim is barred by the products liability economic loss rule and the contractual privity economic loss rule.  In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004), the Florida Supreme Court explained the two different circumstances the economic loss rule applies under Florida law:  The first application, the "contractual privity economic loss rule" is when parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract.  The second application, the "products liability economic loss rule," applies when there is a defect in a product that causes damage to the product, but causes no personal injury or damage to other property. Id. at 536-38.  The "products liability economic loss rule" bars a tort cause of action where a product is involved, when the product damages only itself, and the losses are purely economic.  See Tyco Safety Products Canada, Ltd. v. Abracon Corp., 2008 WL 4753728, *4 (S.D. Fla. 2008) (citing Florida Power and Light Co. v. Westinghouse Electric Corp., 510 So.2d 899, 900 (Fla. 1987).  The "other property" exception is limited to "property unrelated and unconnected to the product sold." Abracon, 2008 WL 4753728 at *4   (citing Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. Dist. Ct. App. 1996).

The Court has already ruled in its June 25, 2009 Order that both the products liability economic loss rule and the contractual privity economic loss rule would bar a negligence or strict

liability claim in this case.  See DE 102 at 8-9.  Regarding the products liability economic loss rule, the Court held:

> This rule applies to the present case.  Hi-Mar does not allege any personal injury or damage to any of its property other than to its D-832, of which the allegedly defective P-2000 was a component.  Similar to the defective resonator in Abracon that damaged the plaintiff's smoke detectors, and the defective resin that caused damage to the boat in Jarmco, the damage to a product in this case, the D-832, which was allegedly caused by a defective component part, the P-2000, is barred by the "products liability economic loss rule." See Abracon, 2008 WL 4753728 at *3-4.  Based on the foregoing precedent, the Court dismisses with prejudice Hi-Mar's strict liability and negligence claims against BASF (Counts VII and VIII).

DE 102 at 9.  Regarding the contractual privity economic loss rule, the Court held:

> In the event that Hi-Mar can, in good faith, allege direct privity with BASF, see supra Count 1 - Common Law Indemnity, the contractual privity economic loss rule would also bar Hi-Mar from bringing strict liability and negligence claims against BASF.

DE 102 at 8 n.2.

In its response to the motion to dismiss, Hi-Mar argues that negligent misrepresentation is an exception to the economic loss rule.  See, e.g., East Coast Brokers and Packers, Inc. v. Seminis Vegetable Seeds, 2009 WL 302076, *2 (M.D. Fla. 2009) ("Negligent misrepresentation remains a viable exception to the economic loss rule, and cases that do not fall into one of the two categories for economic loss should be decided under traditional negligence principles."). To determine whether a negligent misrepresentation claim is barred by the economic loss rule, the Court must determine if the alleged misrepresentation is an act of performance or a term of the bargain.  See Abracon, 2008 WL 4753728 at *3; Premix-Marbletite Mfg. Corp. v. SAW Chefs., Inc., 145 F.Supp.2d 1348, 1358 (S.D. Fla. 2001) ("[When the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies.").  As the court explained in Hotels of Key Largo, Inc. v. RHOS Hotels, Inc.:

> Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement. Therefore, we clarify that where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies and the parties are limited to pursuing their rights in contract.

694 So.2d 74, 78 (Fla. 3rd DCA 1997).

An examination of Hi-Mar's allegations show that Hi-Mar is claiming that BASF sold P-2000 to Hi-Mar and provided Hi-Mar with product safety data sheets and material data sheets. See DE 106 at ¶ 64. Thus, the only alleged acts of performance of the contract on the part of BASF are providing Hi-Mar with the P-2000 and the accompanying documentation. Hi-Mar alleges that BASF omitted from its P-2000 product documentation the material information that it removed the inhibitor/stabilizer in order to induce Hi-Mar to purchase its product, rather than purchasing from a competitor of BASF, who offered a substitute product that used an inhibitor/stabilizer. See DE 106 at ¶¶ 71-72. Implicit in these allegations is that Hi-Mar would not have purchased P-2000 from BASF had it known the stabilizer/inhibitor was removed, as it did not want a product that did not contain a stabilizer/inhibitor. If BASF failed to adequately supply the correct product or documentation, such conduct is not independent of BASF's contractual obligations to Hi-Mar. Rather, it would be "interwoven and indistinct from the heart of the contractual agreement." Hotels of Key Largo, 694 So.2d at 78. Accordingly, Hi-Mar's negligent misrepresentation claim is dismissed with prejudice, as barred by the economic loss rule.

<u>Count IV - Breach of Implied Warranty</u>[4]

Here, BASF argues that Hi-Mar's breach of implied warranty claim fails because Hi-Mar still fails to sufficiently allege privity with BASF.  Under Florida law, "the plaintiff must be in privity with the warrantor" in order to succeed on a breach of implied warranty claim.  <u>Amoroso v. Samuel Friedland Family Enterprises</u>, 604 So.2d 827, 833 (Fla. 4th DCA 1992); <u>see also Weiss v. Johansen</u>, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005).  As the court explained in <u>T.W.M. v. Am. Med. Sys., Inc.</u>, 886 F.Supp. 842 (N.D. Fla. 1995):

> The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant. <u>Kramer v. Piper Aircraft Corp.</u>, 520 So.2d 37 (Fla. 1988); <u>West v. Caterpillar Tractor Co.</u>, 336 So.2d 80 (Fla. 1976).  "Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties." <u>Intergraph Corp. v. Stearman</u>, 555 So.2d 1282, 1283 (Fla. 2d DCA 1990). "A warranty, whether express or implied, is fundamentally a contract.  A contract cause of action requires privity."  <u>Elizabeth N. v. Riverside Group, Inc.</u>, 585 So.2d 376, 378 (Fla. 1st DCA 1991).  <u>See also</u> <u>Spolski General Contractor, Inc. v. Jett-Aire Corp. Aviation Management of Central Fla., Inc.</u>, 637 So.2d 968, 970 (Fla. 5th DCA 1994).

<u>T.W.M.</u>, 886 F.Supp. at 844.

However, the Court has already analyzed the allegations of the second amended third party complaint and determined that "Hi-Mar has sufficiently alleged direct sales between the

---

[4]In its June 29, 2009 Order, the Court dismissed without prejudice Hi-Mar's breach of implied warranty claim against BASF, holding as follows:

> Here, BASF argues that Hi-Mar's breach of implied warranty claim fails because Hi-Mar has not alleged direct privity between it and Hi-Mar.  In its response in opposition, Hi-Mar appears to be arguing that EMCO was BASF's agent in selling the P-2000, such that Hi-Mar was in privity with BASF. (DE 75 at 17). This claim is not clear from Hi-Mar's allegations.  <u>See</u> Comp. ¶ 16, 91. Accordingly, Count X, breach of implied warranty, is dismissed without prejudice to amend to allege more precisely an agency relationship between EMCO and BASF, if that is indeed the theory upon which Hi-Mar intends to proceed.

DE 102 at 9-10.

parties to establish privity with BASF." See supra, Count I.  Accordingly, BASF's motion to dismiss the breach of implied warranty claim for failure to allege privity is denied.

*EMCO's Motion to Dismiss*

EMCO moves to dismiss the following counts alleged against them in the second amended third-party complaint: Common Law Indemnity (Count V); Contribution Pursuant to F.S. § 768.31 (Count VI); and Negligent Misrepresentation (Count VII).  The Court will address each cause of action in turn.

Count V - Common Law Indemnity

EMCO moves to dismiss Hi-Mar's common law indemnity claim against it, "for essentially the same reasons as set forth in [BASF's motion to dismiss]."  (Mot. at 4).  EMCO's motion simply duplicates the substance and analysis of subparagraph 2 of Section III.A of BASF's motion to dismiss, which argues that indemnity is not appropriate in this case because Hi-Mar, by mixing the P-2000 with other materials to form its own D-832 product, became an active rather than passive tortfeasor.  See DE 113 at 7-10.  The Court's analysis denying BASF's motion to dismiss Hi-Mar's indemnity claim is equally applicable here.  See supra, denying BASF's motion to dismiss Count I, common law indemnity.  Accordingly, EMCO's motion to dismiss Count V, common law indemnity, is denied.

Count VI - Contribution Pursuant to F.S. § 768.31

EMCO's motion to dismiss Hi-Mar's statutory contribution claim (Count VI), based upon the recent decision by the Florida Second District Court of Appeal in Wink, is denied without prejudice to reassert the motion at the summary judgment stage.  See supra, denying without prejudice BASF's motion to dismiss Count II, statutory contribution against BASF.

Count VII - Negligent Misrepresentation

       Regarding Count VII, negligent misrepresentation, the claim is dismissed as barred by the economic loss rule.  See supra, dismissing Count III, negligent misrepresentation against BASF.

**Conclusion**

       Based on the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1.      BASF's Motion to Dismiss Second Amended Third-Party Complaint (DE 113) is **GRANTED IN PART AND DENIED IN PART** as follows:

      a.  BASF's motion to dismiss Hi-Mar's common law indemnity claim (Count I) is DENIED.

      b.  BASF's motion to dismiss Hi-Mar's statutory contribution claim against BASF (Count II) is DENIED WITHOUT PREJUDICE to reassert the motion at the summary judgment stage.

      c. Hi-Mar's negligent misrepresentation claim against BASF (Count III) is dismissed with prejudice, as barred by the economic loss rule.

      d  BASF's motion to dismiss Hi-Mar's breach of implied warranty claim (Count IV) is DENIED.

2.      EMCO's Motion to Dismiss Count V (Common Law Indemnity), Count VI (Statutory Contribution), and Count VII (Negligent Misrepresentation) of Hi-Mar's Second Third-Party Complaint (DE 115) is **GRANTED IN PART AND DENIED IN PART** as follows:

      a..  EMCO's motion to dismiss Hi-Mar's common law indemnity claim (Count V) is DENIED.

b.  EMCO's motion to dismiss Hi-Mar's statutory contribution claim against EMCO (Count VI) is DENIED WITHOUT PREJUDICE to reassert the motion at the summary judgment stage.

c.  Hi-Mar's negligent misrepresentation claim against EMCO (Count VII) is dismissed with prejudice, as barred by the economic loss rule.


**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of January, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record