UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80255-CIV-MARRA/JOHNSON

ZURICH AMERICAN INSURANCE COMPANY,
MAPEI INC., AND MAPEI CARIBE, INC.,

    Third-Party Plaintiffs,

BASF CORPORATION and
EMCO CHEMICAL DISTRIBUTORS, INC.,

    Third-Party Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Third-Party Defendant BASF Corporation's ("BASF") Motion for Summary Judgment (DE 172). This matter is fully briefed and ripe for review. The Court has carefully considered the briefing and is otherwise fully advised in the premises.

**I. Background**

This matter arises out of a June 11, 2006, fire at a Puerto Rican facility ("the facility") owned and operated by Plaintiff Mapei Caribe, Inc. ("Mapei Caribe") and insured by Plaintiff Zurich American Insurance Company ("Zurich"). DE 106 at ¶ 14; DE 1 at ¶ 1. Plaintiff Mapei Caribe and Plaintiff Mapei, Inc. (collectively referred to as "Mapei") are engaged in the business of selling grout which was manufactured and stored at the facility. DE 106 at ¶ 1. Defendant Hi-Mar Speciality Chemicals, LLC ("Hi-Mar") sold certain amounts of Octafoam D-832 ("D-832") to Mapei intended for use in production of Mapei's grout formula. DE 106 at ¶ 13. On May 23, 2007, Plaintiffs Zurich, Mapei, Inc., and Mapei Caribe (collectively referred to as "Plaintiffs") filed suit against Hi-Mar, alleging that the "fire was caused by the self-heating and spontaneous

ignition of the D-832 Octofoam that was manufactured, distributed and/or sold by [Hi-Mar]." DE 1 at ¶ 8.

Hi-Mar subsequently filed a Third-Party Complaint against Third-Party Defendants BASF Corporation ("BASF") and EMCO Chemical Distributors, Inc. ("EMCO"). DE 45. The Third-Party Complaint explicitly denied that D-832 was defective as alleged by Plaintiffs, but that if it was defective, it was due to the defective condition of polypropylene glycol P-2000 ("P-2000), a chemical used in the production of D-832. DE 45 at ¶ 31. The Third-Party Complaint further alleged that BASF designed and manufactured P-2000, while EMCO sold and distributed the chemical to Hi-Mar. DE 45 at ¶¶ 14-15.

On July 20, 2009, Hi-Mar filed its Second Third-Party Amended Complaint (DE 106), which is the operative complaint here. The Second Third-Party Amended Complaint alleged: (1) common law indemnity against BASF; (2) contribution against BASF pursuant to section 768.31, Florida Statutes; (3) negligent misrepresentation against BASF; (4) breach of implied warranty against BASF; (5) common law indemnity against EMCO; (6) contribution against EMCO pursuant to section 768.31, Florida Statutes; (7) negligent misrepresentation against EMCO; and (8) breach of implied warranty against EMCO. On January 19, 2010, this Court dismissed Counts III and VII, allowing the other 6 claims to proceed.

Plaintiffs ultimately reached a settlement with Hi-Mar (DE 155), the terms of which included an assignment of Hi-Mar's claims against Third-Party Defendants BASF and EMCO. DE 162 at p. 2. After the Court dismissed Hi-Mar from the matter (DE 156), Plaintiffs filed a Motion to Substitute Party (DE 162). Third-Party Defendants vehemently objected to Plaintiffs' Motion, asserting that Plaintiffs' case was fundamentally inconsistent with Hi-Mar's. See DE

164 at p. 4.  In response to Third-Party Defendants' objection, Plaintiffs asserted:

> BASF's further concern that Plaintiffs would confusingly be "wearing both hats" at trial shows a basic misunderstanding or mischaracterization of the Motion. Plaintiffs have now settled all of their claims against the only defendant, Hi-Mar, and from this point forward, Plaintiffs, as assignees of Hi-Mar's claims, have only <u>one</u> hat to wear, *i.e.,* as assignees of Hi-Mar's claims against BASF and EMCO.

DE 167 at 4 (emphasis in original).  Plaintiffs also stated:

> Finally, to the extent that BASF is concerned that permitting substitution will open the door to broadening allegations of the third-party complaint against BASF and EMCO, its concern is unfounded.  Plaintiffs simply took an assignment of the as-pleaded claims of Hi-Mar against BASF and EMCO, and may not, simply by way of assignment, proceed to alter the pleadings in any way that Hi-Mar itself would be unable to do.  <u>Plaintiffs are, in essence, proceedings in the shoes of Hi-Mar, and acknowledge that they are bound to any admissions previously made by Hi-Mar or any stipulations entered into by Hi-Mar.</u>

<u>Id.</u> at 5 (emphasis supplied).

With these concessions in mind, on September 27, 2011, the Court granted Plaintiffs Motion to Substitute Party with one important caveat: "Plaintiffs are bound to all pleadings previously filed by Hi-Mar <u>and must rely on the record as it stands</u>."  (Emphasis supplied).

Of specific relevant to this Motion, Plaintiffs filed a Motion to Compel Depositions and Extend Certain Pretrial Deadlines (DE 170) on August 19, 2011.  Through their motion, Plaintiffs sought an order: (1) compelling the depositions of corporate representatives that were noticed approximately two weeks before the August 9, 2011, discovery deadline; and (2) allowing for an additional forty-five days following the completion of these depositions to complete its expert disclosures.  DE 170.  On September 30, 2011, Magistrate Judge Linnea R. Johnson granted Plaintiffs' first request to compel the depositions of the corporate representatives, but denied their request to extend the expert disclosure deadline.  (DE 180).

Plaintiffs subsequently filed an objection to the portion of Magistrate Judge Johnson's

3

Order which denied their request to take additional expert depositions. DE 185. Through their Motion, Plaintiffs asserted that because BASF failed to adhere to Federal Rule of Civil Procedure 5(a)(1)(C),[1] they should be entitled to offer expert testimony otherwise inadmissible due to the expiration of the discovery deadline. The Court rejected this argument because it held that BASF did not, in fact, violate Rule 5. DE 194. The Court further held:

> Second, Plaintiffs' argument relies on the fact that BASF produced certain documents to Hi-Mar in 2009. After that production, Hi-Mar had notice of those documents and had the ability and power to utilize them in any way in which they saw fit. On February 3, 2011, when Hi-Mar was still the master of its cause of action against BASF and EMCO, this Court limited all further discovery to "(1) depositions that were noticed on or before January 11, 2011, and (2) depositions of the parties' corporate representatives." (DE 153) at p. 3. If Hi-Mar was still the party of record, it would be precluded from offering the expert testimony that Plaintiffs now seek to have admitted because it failed to act timely. Thus, on the day that the Court granted Plaintiffs' Motion to Substitute Party, Hi-Mar was precluded from offering the very expert testimony that Plaintiffs now seek to admit.
> As Plaintiffs themselves admitted while urging this Court to grant their Motion to Substitute Parties, and as this Court ordered when the substitution of parties was granted, Plaintiffs now stands in the shoes of Hi-Mar as they existed at the time of substitution. <u>The Court will not allow Plaintiffs to reap a benefit not otherwise available to them but for their substitution as Third-Party Plaintiffs</u>.

DE 194 at 5-6 (emphasis supplied).

The motion presently before the Court is a Motion for Summary Judgment filed by BASF. After the time for additional discovery elapsed, the Court allowed the parties to file supplemental briefs "that addresses only how the additional discovery permitted in the November 7, 2011, Order affects the pending Motion for Summary Judgment." DE 198.

---

[1] That rule provides that discovery papers required to be served on a party must be served on every party, unless the court orders otherwise.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must show the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come for/ward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

5

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

### III.  Discussion

The remaining claims against BASF include common law indemnity, statutory contribution, and breach of implied warranty.  Each of these claims, however, necessarily require a finding that BASF's product, P-2000, caused the fire in question.  In its Motion for Summary Judgment, BASF asserts that it is entitled to summary judgment on each of Plaintiff's claims because Plaintiff has failed to set forth any expert testimony to support their claims.  Motion to Dismiss at p. 2-4.  In their Response, Plaintiffs do not introduce any expert testimony, or any other testimony, that support a finding that P-2000 was defective; rather, they move the Court to permit the disclosure of otherwise excluded expert testimony pursuant to Federal Rule of Civil Procedure 56(d).  Response at 9-10.  Plaintiffs have also not asserted that any depositions conducted pursuant to the limited discovery permitted by the Court's November 7, 2011, Order support a finding of causation.

For the reasons outlined in its November 7, 2011, Order ("the Order"), the Court will deny Plaintiffs' request to produce expert testimony pursuant to Rule 56(d).  As articulated in the Order, Hi-Mar had the opportunity to disclose expert testimony when it was active in this case

yet chose not to do so.  The Court will not give Plaintiffs an opportunity to supplement an otherwise deficient record just because Hi-Mar's claims are now controlled by Plaintiffs. Allowing Plaintiffs to disclose new expert testimony would give Plaintiffs an advantage "not otherwise available to them but for their substitution as Third-Party Plaintiffs."  DE 194 at 6.

In light of the Court's decision not to permit any additional expert testimony, the Court finds that Plaintiffs have failed to advance any cognizable evidence to support their theory of causation.  The Court believes the unreported decision in CC-Aventura, Inc. v. Weitz Co., LLC, No. 06-21598-CIV, 2010 WL 1856096 (S.D. Fla. 2010), is persuasive here.  In that case, the court held:

> Because laypeople sometimes lack the knowledge necessary to determine fault in a products liability action, "expert testimony is often required to establish defective design of a product."  Worsham v. A.H. Robins Co., 734 F.2d 676, 685 n. 8 (11th Cir.1984); see also James Hardie Bldg. Prods. v. GSE Dev. Corp., No. 03–21168–CIV, 2007 WL 2176036, at *7 (S.D.Fla. July 24, 2007) (unavailability of expert witness testimony in a product or manufacturing defect case requires dismissal since neither party will be able to prove, or disprove, the ultimate issue of whether the product was defective).  Laypeople do not have specialized knowledge of waterproofing products such as those at issue in this case; therefore, expert testimony would be necessary at trial to determine the extent to which the defective installation of waterproofing materials came about because Metro improperly installed the system or because Tremco's waterproofing product was itself defective.

Id. at *3.  Similar to the waterproofing products at issue in CC-Aventura, the Court finds that the chemicals at issue here necessitates expert testimony to establish the defects alleged by Plaintiffs. Nonetheless, Plaintiffs have failed to articulate any evidence, including non-expert testimony, which would raise a genuine question of material fact that BASF's product P-2000 caused the fire in question.  Absent such evidence, each of Plaintiffs' remaining claims against BASF fail.

Finally, although not briefed by the parties, the Court next examines whether summary

judgment is appropriate in the absence of any evidence either in the affirmative or negative of causation. The decision of the Eleventh Circuit in Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991), is compelling here:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. [Celotex Corp. v. Catrett, 477 U.S. 317 (1986)] did not change the general rule. Celotex simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden.

The "certain circumstances" referred to involves an "unusual situation . . . where neither party could prove either the affirmative or the negative of an essential element of [a] claim." Id. at 607. Thus a defendant is entitled to summary judgment if he can demonstrate "that the party bearing the burden of proof at trial will not be able to meet that burden." Id. at 608.

This case appears to fit within the "unusual situation" discussed in Clark. Defendants have asserted, without any challenge by Plaintiffs, that Plaintiffs have failed to advance any evidence in support of a finding that Defendants' product caused the fire in question. Because Plaintiffs have failed to advance any evidence that would allow them to meet their burden of proof at trial on the issue of causation, summary judgment in favor of Defendants is appropriate here.

## IV.  Conclusion

For all the aforementioned reasons, it is hereby **ORDERED AND ADJUDGED** that Third-Party Defendant BASF Corporation's Motion for Summary Judgment (DE 172) is **GRANTED**. Judgment is hereby entered in favor of Third-Party Defendant BASF Corporation

and against Plaintiffs Zurich American Insurance Company, Mapei, Inc., and Mapei Caribe, Inc.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 9th day of February, 2012.

_____
KENNETH A. MARRA
United States District Judge